IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| | * | |
| vs. | * | No. 4:08CR00314 SWW |
| | * | |
| LORENA CERVANTES, ET AL. | * | |

ORDER

Before the Court is a motion to suppress filed by defendants Reveriano Madrigal and Jesus Murillo.[1]  The United States responded to the motion.  After careful consideration, and for the reasons that follow, the motion will be denied.

Defendants move to suppress the out-of-court identification made by Wildlife Officer William Ryan Warner on August 7, 2008.  Defendants were arrested on August 5, 2008, in Izard County, Arkansas, following surveillance by law enforcement officers including Warner.  In his Accident/Investigation Report[2], Warner relates that on August 1, 2008, he and Corporal Chris Majors located a marijuana manufacturing operation in Izard County.  While conducting surveillance on August 3, 2008, Warner observed two Hispanic males, one in a sleeveless black shirt and another in an orange-striped shirt.  Warner saw them pouring water from containers by the back of an S-10 truck located next to a cabin at approximately 6:00 p.m.  They disappeared from sight at around 6:15 p.m.  Officer Warner continued to conduct surveillance on the property on August 4-5, 2008.

---

[1] Defendant Jesus Murillo moved to join defendant Madrigal's motion to suppress. The Court granted the motion [docket entry 103].

[2] Attachment to Def. Madrigal's Mot. to Suppress.

On August 5, 2008, Warner observed one Hispanic female and four Hispanic males from approximately 8:30 a.m. to 10:00 a.m. Officer Warner and Corporal Majors left for some time to lead two other officers to the observation point. Upon their return, Warner saw two male subjects "coming down the ridge road. One was wearing a light blue shirt and the other was wearing a bluish-gray polo shirt and camo hat and had a mustache." The one wearing the bluish-gray polo was carrying a machete. Subsequently, Warner observed the male in the bluish-gray polo carrying a green pick ax over his shoulder walking toward the marijuana patches.

On August 7, 2008, James Humphrey of the 16th Drug Task Force asked Warner to come to the Sheriff's Office to see if he could identify the suspects he saw pouring the water jugs on August 4 and the one carrying the pick ax on August 5. Warner identified Jesus Murillo as the individual he saw pouring the water, and Reveriano Madrigal as the individual carrying the pick ax toward the marijuana patches.

Defendants ask the Court to suppress any and all of Warner's out-of-court identification testimony, arguing his identification was unreliable and tainted because it did not involve a line-up and was made by a single show-up.

> [R]eliability is the linchpin in determining the admissibility of identification testimony . . .. The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite,* 432 U.S. 98, 114 (1977). "An identification is unreliable if its circumstances create a very substantial likelihood of irreparable misidentification." *United States v. Martinez,* 462 F.3d 903, 910 (8th Cir. 2006)(internal quotation marks omitted).

Officer Warner had the opportunity to observe the suspects on the property for several hours over a period of days. The government states Warner will testify that he used binoculars in his observation of the defendants and that Madrigal was the only person with a mustache observed on the property. He described defendants' clothing and race. Officer Warner was not a "casual or passing observer, as is so often the case with eyewitness identification. [He] was a trained law enforcement officer on duty . . .[who] knew that his claimed observations would be subject later to close scrutiny and examination at any trial." *Manson,* 432 U.S. at 115. The government states Warner is prepared to testify that he has no doubt that the individuals he observed at the property were the defendants he identified only days later at the Sheriff's Office. The reliability of the identifications are further supported by the fact that defendants were arrested as they were leaving the property under surveillance by Warner, and that, according to the government, defendants admitted in an interview with a DEA special agent that they were visiting the property.

The Court finds that under all of the circumstances it cannot be said that there is "'a very substantial likelihood of irreparable misidentification.' Short of that point, such evidence is for the jury to weigh." *Id.* at 116 (internal citation omitted). In any event, defense counsel has the opportunity to protect defendants' rights by "attacking the reliability and accuracy of the identification through cross-examination." *United States v. Bissonette,* 164 F.3d 1143, 1146 (8th Cir. 1999).

IT IS THEREFORE ORDERED that the motion to suppress [docket entry 94] is denied.

DATED this 22nd day of January, 2010.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE